IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jackie Alford and Phyllis Alford, | Civil Action No.: 8:13-1787-BHH |
| Plaintiffs, | |
| v. | |
| Lowe's Home Centers, Inc. and Lehigh Consumer Products, LLC, | **OPINION AND ORDER** |
| Defendants. | |

This matter is before the Court on the defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (ECF No. 23.) The defendants contend that the plaintiffs have failed to establish the essential elements of their causes of action against the defendants.

### BACKGROUND

This case concerns a tree trimming accident that occurred on June 18, 2010, while Plaintiff Jackie Alford was removing dead and dying trees from a private property located in Westminster, South Carolina. Just five months prior to the accident, the plaintiff started a residential tree cutting business called Dr. Daniels Tree Service. (Pl. Dep. at 29-30.) The plaintiff and his wife, Plaintiff Phyllis Alford, ran the business. (Pl. Dep. at 55-56.)

The plaintiff purchased a rope from Lowe's, in Seneca, South Carolina, on April 27, 2010, to use as his life safety or "lifeline" for tree climbing. (Pl. Dep. at 59.) He purchased this rope to replace a previous and identical one. *Id.* The plaintiff bought all of the ropes he used in his business – including lanyards, lifeline ropes, and ropes used to lower limbs – from Lowe's. *Id.* at 61. The plaintiff testified that he would normally use a rope as his

1

"lifeline" rope for a couple of jobs, and when he got a new rope he would use the old lifeline rope for less serious applications, like lowering limbs. *Id.* at 58.

According to the defendants, the rope at issue was a recreational rope manufactured by Defendant Lehigh and marketed and sold by Defendant Lowe's. The rope was a solid braid blend of nylon, polyester, and polypropylene. (Pl. Resp. Ex. A.) The rope was 7/16", less than half an inch in diameter. *Id.* The rope was rated with a 300-pound safe working load. It cost $19.97. *Id.* The label affixed to the subject rope contained a warning, discussed in more detail *infra*, that included, among other things, a recommendation that the rope not be used when personal safety is endangered. *Id.*

The morning of the accident in question, the plaintiff prepared to climb a tall Oak tree to cut limbs from the top of the tree before cutting it down. (Pl. Dep. at 92.) The plaintiff attached a lanyard around the trunk of the tree and "shimmied up the tree." *Id.* at 93. He "took off the small, little branches on [his] way up" with his hands. (Pl. Dep. at 93.) As indicated, when he reached the top of the tree, he tied the Lehigh rope around a tree branch to use as his "lifeline." *Id.* He carried a chain saw attached to his climbing saddle to cut down limbs as he was coming down. *Id.* When he reached the top of the tree, he detached all other ropes, which were securing him to the tree, except for the Lehigh rope. Almost immediately thereafter, Alford stepped out on a tree branch and slipped or fell, the Lehigh rope broke, and he fell fifty (50) to sixty (60) feet to the ground.

## **STANDARD OF REVIEW**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

## DISCUSSION

As is typical in products liability litigation, the plaintiffs have pled claims in negligence, strict liability, and warranty theories. Under South Carolina law, however, a plaintiff in a product liability action must prove three elements regardless of the legal theory on which he seeks recovery: (1) that he was injured by the product; (2) that the product, at the time of the accident, was in essentially the same condition as when it left the hands of the defendant; and (3) that the injury occurred because the product was in a defective condition unreasonably dangerous to the user. *See Claytor v. General Motors Corp.*, 286 S.E.2d 129, 131 (1982) (emphasis added); *Bragg v. Hi-Ranger, Inc.*, 462 S.E.2d 321, 326 (Ct. App. 1995). The failure to provide evidence in support of any of these elements precludes recovery. As such, in order to survive summary judgment under any of plaintiffs' causes of action – strict liability, negligence, or breach of warranty – the plaintiffs must present evidence that the plaintiff's injuries were proximately caused by a "defective condition" that made the Lehigh rope "unreasonably dangerous."

Critically, however, "a product bearing a warning that the product is safe for use if

4

the user follows the warning is neither defective nor unreasonably dangerous; therefore, the seller is not liable for any injuries caused by the use of the product if the user ignores the warning." *Anderson v. Green Bull, Inc.*, 471 S.E.2d 708 (S.C. Ct. App. 1996); *see also Claytor v. General Motors Corp.*, 286 S.E.2d 129, 132 (1982) (stating that, if products are "properly prepared, manufactured, packaged and accompanied with adequate warnings and instructions, they cannot be said to be defective").

It is undisputed that the label for the rope at issue contained a warning. (Pl. Resp. Ex. 1.) The label read as follows:

> WARNING: Avoid using a knot, splicing is preferable. Knots reduce the strength of the rope up to 40%. **Do not use this product where personal safety can be endangered**. The working loads shown above should never be exceeded. Never stand in line with rope under tension; such a rope, particularly a nylon rope, may recoil (snap back). Misuse can result in serious injury or death.

*Id.* (emphasis added). The defendant would especially emphasize that the label expressly warned that the rope was not to be used "where personal safety [could] be endangered" and that "misuse [could] result in serious injury or death." *Id.* It is confessed that the plaintiff specifically used the rope as his "lifeline" while working 50 to 60 feet above the ground. (Pl. Dep. at 78, 102.)

The plaintiff, however, claims that the warning was inadequate for vagueness and lack of specificity. To that end, the plaintiff's human factors expert, Dr. Wogalter has offered opinion testimony as to the deficiency and inadequacy of the label:

1. That the warning itself should have contained the specific wording not to use the rope for climbing or putting your weight on it (Wogalter Dep. at 27);

2. That the statement "[d]o not use this product where personal safety can be

5

endangered" is too generalized, subject to interpretation, not effective, and that the use of the word "misuse" is not clearly defined, *id.* at 29–32;

3. That nothing on the label defines the strength-safe working load and strength of the rope as applicable when the rope is under a static load only as opposed to a dynamic one, *id.* at 10, 54;

4. That specific changes should have been made to the label and that such changes would have communicated the dangers properly to the plaintiff, *id.* at 42-43;

5. That the suggested changes would have affected the plaintiff's having used the rope, *id.* at 47-48; and

6. That the warning label in this case was not made for people to grasp, *id.* at 59.

Additionally, Dr. Wogalter testified that the label was further defective in that

1. The picture of the use of the rope in tree work, and the one using it with a block for lifting heavy objects, gave a false impression on how the product can be used, *id.* at 9-10;

2. The use of the word "Pro-grade" gives an impression of a professional grade rope, *id.* at 15;

3. That the pictorials on the label are generalizations, *id.* at 23–24;

4. That the plaintiff's belief that he could use the rope as a guide wire was reasonable, *id.* at 20.

It is true that such expert evidence has been recognized by this District as sufficient to create issues of fact concerning the adequacy of any warning. *See Campbell v. Gala Indus., Inc.,* 2006 WL 1073796, at *3 (D.S.C. Apr. 20, 2006). And, under South Carolina law "[o]nce it is established that a product must display a warning to be safe, the question

of the adequacy of the warning is one of fact for the jury as long as evidence has been presented that the warning was inadequate." *Allen v. Long Mfg. NC, Inc.*, 332 S.C. 422, 505 S.E.2d 354 (S.C. Ct. App.1998).  The undersigned personally does not believe there exists significant ambiguity in the pictorial imaging or the phrase "[d]o not use this product where personal safety can be endangered," especially relative to the subject conduct involved – tree scaling.  At this stage, however, it is not the court's function to weigh the evidence, particularly where expert testimony speaks contrarily to the Court' private view of it. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

But, the inquiry does not end precisely there.  The absence of an alternate warning must be the proximate cause of the injuries sustained. *See Allen*, 505 S.E.2d at 359-60; *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671 (1978) (proximate cause is essential element common to tort theories).  In other words, "[t]he plaintiff has the burden of showing that a warning would have made a difference in the conduct of the person warned." *Allen*, 505 S.E.2d at 359 (citing 63A AM. JUR. 2D Products Liability § 1240 (1997)).

The expert witness concluded that a superior warning would have altered the plaintiff's choice and behavior, *id.* at 47-48.  But, the defendant contends that the plaintiff testified to never having read the label such that he could not have possibly been influenced by it.  The Court finds the testimony not as clear as suggested.

Specifically, the deposition colloquy with the plaintiff, in relevant part, was as follows:

> Q. Did you read the labeling that was on the rope at the time you purchased it?
>
> A. No.  It was a quick snatch and grab.  But, like I said, I've used it prior to that and it's been a good rope.  So I was going

> by the rating, the way it was solid braid and everything. That's
> . . .
>
> Q. So at the time you purchased the subject rope, did you read any of the wording underneath the rating [300 lbs safe working load]?
>
> A. No.
>
> Q. Had you done that – had you read the wording underneath the rating on any of the prior –
>
> A. No.
>
> Q. – ropes you bought?
>
> A. I read the rating of it and, like I said, I just went from there.
>
> . . .
>
> A. Well, the difference is – I mean your safe working load is what you're putting on it at the time so – and that was just my body weight, and a saw, and my saddle, you know, so . . .
>
> (Pl. Dep. 79-80).
>
> Q. When you picked out the rope from Lowe's whatever verbiage was underneath these pictorials --and here's the 300 safe working load we talked about earlier -- whatever verbiage was underneath that, did you read that –
>
> A. No.

(Alford Dep. 171:18-23, Ex. A).

The plaintiff has testified to a history with the labeling and some reliance on the same, the rating in particular. The expert has specifically testified that the labeling with respect to the strength safe working load and strength of the rope contributed to the confusion, *id.* at 10, 54. Taken together there is the slightest issue as to reliance and whether a superior warning would have altered behavior.

Again, the Court's personal sympathies are not prerequisite to any recovery but it is a strange result for the plaintiff to continue in his claims for admittedly ignoring a warning that advised against using the rope where personal safety was a concern thereby making unlikely the benefit of any improved admonition in labeling.  Nevertheless, the plaintiff's evidence is of a sufficiently nuanced kind so as to remove that kind of adjudication from the undersigned.  It is an issue of fact, therefore, but barely.

Whether the case ultimately presents persuasively to a jury seems dubious.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is DENIED.  (ECF No. 23).

IT IS SO ORDERED.

s/ Bruce Howe Hendricks
United States District Judge

Greenville, South Carolina
October 15, 2014